**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Deborah Sanchez,

        Plaintiff,

v.

County of Graham, et al.,

        Defendants.

No. CV-21-00073-TUC-JCH

**ORDER**

This matter is set for a two-week jury trial on February 5, 2024. Before the Court are five motions in limine (Docs. 60, 61, 63, 64, 65). On April 11, 2023, the Court heard argument on the motions. *See Sanchez v. Graham County, et al.*, 4:21-CV-00073-TUC-JCH (D. Ariz. April 11, 2023), Hr'g Tr. at 89:12 (hereinafter "April Hr'g Tr."). The Court resolved two motions,[1] and took the remaining matters under advisement. *See id.* This is the Court's written order.

## I.    Background

This case concerns the tragic death of Jorden Simms ("Decedent"). On December 21, 2019, City of Safford police arrested Decedent who was taken to the Graham County Adult Detention Center Jail. *See* Doc. 56. On December 26, 2019, Graham County Sheriff Patrol Deputy Rosemary Lacey-Juarez ("Deputy Lacey") and Graham County Jail Corrections Sergeant Arthur Perez ("Sergeant Perez") transported Decedent from Safford to Sierra Vista for an examination. During the return trip to Safford, Decedent was fatally injured when she exited the back seat of the Graham County Sheriff's Department's Ford Explorer patrol vehicle while it was traveling at approximately 30 to 35 miles per hour. Plaintiff Deborah Sanchez, Decedent's mother, brings this wrongful death lawsuit.

---

[1] At the hearing the Court granted "Plaintiff's Motion to Permit Late Disclosure of Photographs," (Doc. 74); and denied as moot "Defendants' Motion in Limine No. 3 To Preclude Family Photos That Are Late Disclosed and That Lack Identification of the Persons in the Photos," (Doc. 62). *See* Doc. 81.

## II.      Defendants' MIL No. 1 (Doc. 60)

Decedent was transported using transport restraints, a device involving wrist cuffs attached to a belly chain and separate ankle cuffs. Decedent's transport restraints were removed for the examination. *See* Doc. 60. Decedent allegedly explained to Deputy Lacey, who was unfamiliar with the transport restraints, how to disconnect the wrist cuffs from the belly chains and how to remove both. Doc. 69 at 2. In the examination room, Decedent showed Deputy Lacey how to re-attach the wrist cuffs to the belly chain. *Id.* There is no dispute that Deputy Lacey applied the transport restraints after the examination. April Hr'g Tr. at 90:23.

Plaintiff argues that Deputy Lacey's knowledge and experience, or lack thereof, regarding the transport restrains supports a "failure to train" theory. More specifically, Plaintiff's Expert Witness—Dan Saban—offers four opinions related to Deputy Lacey's lack of training and experience involving the transport restraints. Doc. 69 at 2. According to Mr. Saban, "it was unreasonable and a lack of law enforcement due care for Defendant Lacey not to familiarize herself with the restraints being used to transport the prisoner who she was charged to supervise and protect." Doc. 69-1 at 5. Second, Mr. Saban concludes that it was unreasonable and a lack of due care for Deputy Lacey to ask Decedent for guidance and to allow the prisoner to remove and reapply her own restraints. *Id.* at 5–6. Third, Mr. Saban concludes that it was unreasonable and a lack of due care to assign Deputy Lacey to transport the Decedent based on Deputy Lacey's having no experience as a detention office, in transporting a prisoner, or in using the transport restraints. *Id.* at 4—5. Lastly, Mr. Saban concludes that Deputy Lacey's lack of training and experience failed to minimize Decedent's opportunity to escape and emboldened her to do so. *Id.* at 10.

Defendants move to preclude evidence regarding Deputy Lacey's lack of training and experience with the transport restraints under Federal Rules of Evidence 401, 402, and 403. Doc. 60 at 2. Defendants contend that Sergeant Perez checked and adjusted the transport restraints. *Id.* Thus Defendants claim Sergeant Perez's actions supersede Deputy Lacey's actions and the challenged evidence will only serve to confuse and mislead the jury

and waste time. Doc. 60 at 3. Defendants also argue that Deputy Lacey's lack of knowledge and training have no relevance, materiality, or connection to Decedent removing the transport restraints. *Id.* The Court disagrees.

Deputy Lacey's training and experience, or lack thereof, is relevant to the series of missteps alleged by Plaintiff. The jury is entitled to hear and consider this step in the process leading up to and immediately preceding Decedent's death. Also, there is nothing unfairly prejudicial about this evidence. Whether Deputy Lacey's actions contributed to Decedent's harm, or whether Sergeant Perez intervened and severed the casual chain between Deputy Lacey's conduct and Decedent's harm, is a factual question to be determined by the jury. The Court reserves final ruling as to the relevance and admissibility of Deputy Lacey's specific training depending on the context of the evidence presented at trial. Therefore, Defendants' MIL No. 1 (Doc. 60) is **DENIED**.

## III.    Defendants' MIL No. 2 (Doc. 61)

Defendants move to preclude Decedent's medical and mental health records including evidence related to her medical and/or mental health issues and treatment in the years leading up to her death. Doc. 61. Plaintiff opposes. Doc. 70. Specifically, Defendants identify eight medical health records, including:

1. Records from Gila Valley Clinic from December 18, 2014, to July 18, 2017, which detail treatment related to strep throat, allergies, fatigue, depressive disorder, migraines, anxiety, Lupus, moderate depressed bipolar disorder, and headaches;

2. Records from Gila Health Resources from September 14, 2014, to January 11, 2015, which detail treatment related to sore throat, cough, sinus congestion, ear pain, allergic anaphylactic reaction, constipation, nausea and vomiting, bronchitis, trauma from assault, rheumatoid arthritis, etc.;

3. Records from Mount Graham Regional Medical Center from April 24, 2015, to May 5, 2019, which detail treatment related to allergic reaction, abdominal pain, chest pain, nausea, vomiting, diarrhea, shortness of breath, etc.;

4. Records from Canyonlands Healthcare from March 2, 2016, to October 29, 2018, which detail treatment related to Lupus, rheumatoid arthritis, musculoskeletal pain, depression, anxiety, and cold symptoms;

5. Records from Southeastern Arizona Behavioral Health Services from June 19, 2017, to April 15, 2019, which detail treatment related to substance abuse and mood disorder(s);

6. Records from Arizona Counseling from January 23, 2018, to December 12, 2019, which detail treatment related to counseling for substance abuse;

7. Records from Palo Verde Behavioral Health from October 27, 2015, to November 2, 2015, which detail treatment related to in-patient care for possible mood disorder(s); and

8. Records from Palo Verde Behavioral Health from May 11, 2017, to May 15, 2017, which detail treatment related to major depressive disorder, a suicide attempt, and psychiatric evaluation.

Doc. 61 at 3–4. Defendants contend that the records should be precluded because they are irrelevant, lack foundation, and have the "potential to mislead and confuse the jury, waste time, and constitute unfair prejudice that far outweighs any potential probative value." *Id.* at 2, 4.

At the hearing, Plaintiff's counsel clarified that the records are relevant to both liability and damages and indicated that for specific health records, he would call the relevant custodian of records to lay foundation. April Hr'g Tr. at 95:19. He further clarified that the records contextualize Plaintiff's anticipated testimony, specifically how Plaintiff understood Decedent's medical conditions and her observations regarding Decedent's medical conditions leading up to Decedent's time in custody. April Hr'g Tr. at 96:19.

Here, the medical records are voluminous, complex, and risk confusing or misleading the jury. Specific and more recent mental health records may be relevant to explain actions taken by Decedent or necessary for Plaintiff to rebut Defendants' character evidence. The relevance of Plaintiff's physical health record, however, is unclear to the

Court. The Court agrees that Plaintiff may testify to her understanding of Plaintiff's conditions and what Plaintiff was going through. Plaintiff may not, however, testify as a lay witness regarding the causation of any specific diagnoses or condition. *See* Fed. R. Evid. 701. Accordingly, the Court **DEFERS** ruling on Defendants' MIL No. 2 (Doc. 61). At trial, Plaintiff may move to admit *specific* medical records by laying foundation through the appropriate custodian of record. At that time the Court will rule on the relevance and admissibility of specific medical records depending on the context of the evidence presented at trial. The Court will not allow Plaintiff to move medical records into evidence in bulk.

## IV.   Defendants' MIL No. 4 (Doc. 63)

It is undisputed that Decedent opened the driver's side rear passenger door. *See* Doc. 56. It is also undisputed that the child lock on the driver's side rear passenger door was disengaged, whereas the child lock on the opposite side was engaged. Doc. 63 at 2; *see* Doc. 71.  Defendants move to admit testimony and photos regarding child locks related to two separate vehicles. Doc. 63. Defendants seek to raise this issue at trial and examine Plaintiff Deborah Sanchez and her husband Martin Sanchez about their respective vehicle's child locks. According to Defendants, "[Decedent] would have been familiar with child locks, having ridden in both her mother Deborah Sanchez's 4-door pickup truck, and in Deborah's husband Martin Sanchez's Chevrolet Tahoe SUV." Doc. 63 at 2. Defendants argue "adequate circumstantial evidence" exists for the jury to infer Decedent manually switched the child lock on the Sheriff's Ford Explorer's. *Id.* Plaintiff argues that there is no evidence to establish or disestablish whether Plaintiff had knowledge of the child locks. April Hr'g Tr. at 104:10. Defendants concede that neither Deputy Lacey nor Sergeant Perez knew the vehicle had child locks and neither testified to seeing Decedent touch or manipulate the child locks. April Hr'g Tr. at 103:14. Because there is no causal connection, Plaintiff argues that the proffered evidence lacks relevance. April Hr'g Tr. at 106:16.

Here, Defendants will have latitude to make their argument. At trial Defendants may cross-examine Plaintiff regarding her use of child locks in her vehicle around the Decedent, instances when Decedent rode in the front passenger seat and in the back seat, and instances

when Decedent put her kids in the back seat and closed the back doors. Such testimony will be limited in both time and scope. Defendants' MIL No. 4 (Doc. 63) is **GRANTED IN PART** with respect to testimony regarding Deborah Sanchez's 4-door pickup truck.

Testimony from Martin Sanchez, regarding the child locks in his vehicle, will not be permitted. Because Mr. Sanchez never used child locks in his vehicle around Decedent and Decedent's children never rode in the back seat in his vehicle, there is an insufficient connection to infer Decedent had knowledge of the child locks in Mr. Sanchez's vehicle. And, to the extent such testimony is probative, it would be cumulative. Defendants' MIL No. 4 (Doc. 63) is **DENIED IN PART** with respect to testimony regarding Martin Sanchez's Chevrolet Tahoe SUV.

**V.    Defendants' MIL No. 5 (Doc. 64) and Plaintiff's MIL No. 1 (Doc. 65)**

During her deposition, Plaintiff made statements reiterating her belief that Decedent was beaten and pushed from the Sheriff's vehicle. Doc. 64 at 2. Plaintiff has made similar statements on social media. April Hr'g Tr. at 112:10. Plaintiff also has a decal that fills the back window of her pickup truck which contains statements and accusations that Decedent was sexually assaulted, beaten, and murdered by officers of those agencies, and contains a slur directed at those agencies. Doc. 64-1 at 6. The Parties filed cross motions in limine with respect to public statements made by Plaintiff and photographs of the decal. Docs. 64, 65. Defendant moves to admit Plaintiff's statements and photographs of the decal, to which Plaintiff opposes. Docs. 64, 73. Plaintiff moves to preclude the same items, to which Defendants oppose. Docs. 65, 68.

The Court will preclude photographs of the truck decal as unfairly prejudicial. Although potentially relevant, the attitudes towards police, and the manner in which those attitudes are expressed and depicted in the decal are likely to put-off and impermissibly influence certain jurors. Any probative value this evidence might have is substantially outweighed by the risk of unfair prejudice.

The Court will permit testimony from Plaintiff regarding her statements and beliefs, limited in both time and scope. Plaintiff's statements are relevant to damages but not liability. Specifically, the statements are probative of her mental anguish resulting from the

circumstances surrounding Decedent's death. Defendants may show how this anguish is based upon beliefs inconsistent with the evidence and provide the jury with a way to measure the harm claimed by Plaintiff. Defense counsel previewed the proposed line of questioning:

> Defense Counsel:   This is a two minute or less examination.  Mrs. Sanchez … ma'am, you believe that the officers beat up Jordan and threw her out of the vehicle, correct?
> Yes.
> You believe that they murdered her?
> Yes.
> And you've announced that publicly by posting this…on social media [and] posting this [decal] in the back of your window.
> Yes.
> … that's it.

April Hr'g Tr. at 112:02. Plaintiff's counsel will have the opportunity to redirect his client on this issue. Both parties will have the opportunity to argue whether this testimony bears on damages. Accordingly, Defendants' MIL No. 4 (Doc. 64) is **DENIED IN PART** and **GRANTED IN PART.** Plaintiff's MIL No 1 (Doc. 65) is **DENIED IN PART** and **GRANTED IN PART**.

///
///
///
///
///
///
///
///
///
///
///

**VI.    Order**

**IT IS ORDERED:**

(1) Defendants' MIL No. 1 (Doc. 60) is **DENIED**.

(2) Defendants' MIL No. 2 (Doc. 61) is **DEFERRED** until time of trial.

(3) Defendants' MIL No. 4 (Doc. 63) is **GRANTED IN PART AND DENIED IN PART**.

(4) Defendants' MIL No. 5 (Doc. 64) is **DENIED IN PART** and **GRANTED IN PART.**

(5) Plaintiff's MIL No 1 (Doc. 65) is **DENIED IN PART** and **GRANTED IN PART**.

Dated this 20th day of April, 2023.

Honorable John C. Hinderaker
United States District Judge